# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

INVENTEC PERFORMANCE CHEMICALS USA LLC,
*a Connecticut limited liability company,*

> *Plaintiff*,

v.

OPTIMAL SERVICES LLC, *a Florida limited liability company*, AMTECH MANUFACTURING LLC, *a Connecticut limited liability company,* AMTECH LLC, *a New Mexico limited liability company,* AMTECH DISTRIBUTION LLC, *a Delaware limited liability company*, MARK MILLER, *an individual*, John Does 1 through 10.

> *Defendants*.

Civil Action No. 3:22-cv-1252

JURY TRIAL DEMANDED

Filed: October 7, 2022

## <u>COMPLAINT</u>

This case is about a terminated distributor impersonating its former supplier, not only by misappropriating the supplier's trademark and tradename, AMTECH, as names for its infringing products and a slew of its related entities, but also by misappropriating Plaintiff's entire complex product naming system, duplicating over 50 product names such as NC-559 (shown below, left), RMA-223 and NWS-4200, which names have been used by the supplier for years. The terminated distributor's product (below, right) is deceitfully passed off as the "Original."

   

Plaintiff Inventec Performance Chemicals USA LLC ("Plaintiff" or "Inventec"), by and through its attorneys, Leason Ellis, for its Complaint against Defendants Optimal Services LLC,

a Florida limited liability company, Amtech Manufacturing LLC, a Connecticut limited liability company, Amtech LLC, a New Mexico limited liability company, Amtech Distribution LLC, a Delaware limited liability company, Mark Miller, an individual, and John Does 1 through 10 (collectively, "Defendants"), on personal knowledge as to Inventec's own activities and on information and belief as to the activities of Defendants, alleges the following:

### NATURE OF THIS ACTION

This is a civil action for unfair competition, false designation of origin, and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for violation of the Connecticut Unfair Trade Practice Act, arising from the unauthorized use of Plaintiff's trademarks by the terminated distributor, Optimal Services LLC dba Amtech Direct ("Optimal"), and a network of companies related to Optimal, as well as from false claims disseminated by the Defendants relating to the origin, provenance, and quality of their infringing products. After Plaintiff Inventec terminated its distribution agreement with Optimal in August 2021, Defendants willfully and knowingly infringed and continue to infringe upon Plaintiff's trademark rights, by manufacturing and distributing products bearing the AMTECH trademark and other trademarks of Plaintiff.  In addition, after termination of Optimal, it and/or other Defendants, deceptively held themselves out as the "original" source of AMTECH products, and deceptively described their products as constituting "original" formulations of Plaintiff's legacy products. Defendants further made false statements designed to damage Plaintiff's reputation and sales.  As a result, Plaintiff has been and will continue to be damaged by Defendants' unlawful conduct unless enjoined by this Court.

**THE PARTIES**

1.      Plaintiff Inventec Performance Chemicals USA LLC ("Inventec") is a Connecticut limited liability company with its principal place of business at 500 Main Street, Suite 18, Deep River, CT 06417.

2.      Upon information and belief, Defendant Optimal Services LLC dba Amtech Direct ("Optimal") is a limited liability company organized and existing under the laws of Florida, with its principal place of business at 312 Celebration Place, Kissimmee, Florida 34747 or 52 Riley Road, Unit 324, Kissimmee, Florida 34747.

3.      Upon information and belief, Defendant Amtech Manufacturing LLC (the "Manufacturing LLC") is a limited liability company organized and existing under the laws of Connecticut, with its principal place of business at 2389 Main Street, Ste. 100, Glastonbury, Connecticut 06033.

4.      Upon information and belief, Defendant Amtech LLC (the "New Mexico LLC") is a limited liability company organized and existing under the laws of New Mexico, with its principal place of business at 530-B Harkle Rd. Ste 100, Santa Fe, New Mexico 87505.

5.      Upon information and belief, Defendant Amtech Distribution LLC (the "Distribution LLC") is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 1041 N. Dupont Hwy, Dover, Delaware 19910.

6.      Upon information and belief, Defendant Mark Miller ("Miller") is an individual, with an address at 52 Riley Road, Celebration, Florida 34747.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendants by virtue of their transacting, doing, and soliciting business in this state, related to the incidents giving rise to this dispute, namely their infringing use of the AMTECH trademark.

9.      As alleged in detail below, Optimal entered into a distribution agreement with Plaintiff, a Connecticut business, and has held itself out as a licensee of Plaintiff. Optimal and its manager, Miller, performed under that agreement from 2016 through September 2021.

10.     On information and belief, Optimal transacts business in this state, including by manufacturing and/or distributing infringing products in Connecticut, and selling infringing products into Connecticut by means of, at a minimum, interactive ecommerce websites accessible in Connecticut.

11.     The Manufacturing LLC is a Connecticut company and has held itself out as the manufacturer of the Infringing Products, which products are sold into Connecticut and/or are manufactured in Connecticut.

12.     The New Mexico LLC has asserted that it has alleged trademark rights arising from Optimal's infringing activities that occurred in this state. Upon information and belief, the New Mexico, LLC is the sole member of the Manufacturing LLC, a Connecticut company. Furthermore, individual defendant Mark Miller is both the manager of the New Mexico LLC as well as the principal of Optimal.

13.     The Distribution LLC has identified itself on materials promoting the Infringing Products as doing business in Connecticut, and upon information and belief, transacts business in this state.

14.     Mark Miller, the manager of Optimal, entered into the distribution agreement with Plaintiff, performed duties pursuant to that contract in Connecticut, caused to be incorporated at least one Connecticut corporation improperly bearing the AMTECH trademark, and is the

manager of the New Mexico LLC which claims rights arising from the infringing sales into Connecticut.

15.     As alleged herein, the Defendants act as a single entity.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, as alleged herein, a substantial part of the events giving rise to the claims occurred in this District.

**FACTS COMMON TO ALL COUNTS**

**Inventec's AMTECH products and its trademarks**

17.     Inventec, located in Deep River, Connecticut, is the owner of the AMTECH trademark which it has used in the U.S. since 2014, after purchasing common law rights dating back to 1995, pursuant to an asset purchase agreement. Inventec hired Optimal to distribute AMTECH products in 2016 and terminated it in 2021. Optimal refused to cease use of the AMTECH mark and now passes off infringing products under the AMTECH mark and further labels them as the "original." Optimal sells online and through distributors through a web of related companies using AMTECH-variant trading names.

18.     Inventec produces performance chemicals for high tech industries including solvents, detergents, and other chemicals such as cleaning solutions, and coatings for electronic assemblies, sold under various brand names.

19.      Inventec's AMTECH-brand products include solder, solder paste, bar solder, core wire, and tacky flux (the "AMTECH Products"). These types of products are used in attaching surface mount technology devices to circuit boards and are referred to by the vendors and purchasers of such products as SMT line chemicals solution products.





20.     By an Asset Purchase Agreement dated October 20, 2014, Inventec acquired substantially all of the assets of SMT International LLC ("SMTI"), including all of SMTI's intellectual property. Inventec acquired intellectual property including the trade name and trademark "AMTECH," product "know-how," and formulae and production processes for SMTI's products.

21.     Inventec's purchase of SMTI's assets, including the AMTECH trademark, was reported in business media at the time:



22.     Inventec's purchase of SMTI and the AMTECH line of products was announced on www.amtechsolder.com at the time:



23.     The 2014 Asset Purchase Agreement identified over fifty different trade names and trademarks in use by SMTI at the time, including AMTECH, SynTECH, NC-559, NC-559-V2, RMA-223, and NWS-4200. All the trademarks, goodwill, and know-how relating to the respective products were assigned to Inventec.

24.     SMTI had been selling SMT products under the AMTECH trademark since approximately 1995. As Inventec has made continuous use of the AMTECH trademark since the 2014 Asset Purchase Agreement (the "APA"), Inventec's common law trademark rights in the AMTECH trademark date back to 1995.

25.     In addition to Inventec's continuous use of the AMTECH trademark, it has made continuous use of various product trademarks in connection with the AMTECH Products since the 2014 APA purchase, such as NC-559-V2, NC-559-ASM, and SynTECH-LF. Attached as Exhibit A is a list of product trademarks used continuously by Inventec since the 2014 APA (the "Product Trademarks").

26.     The Product Trademarks in Exhibit A, although containing certain elements that themselves may be abbreviations in the SMT industry, are, in their totality, unique and distinctive combinations of symbols, and function as trademarks. Furthermore, as a result of Inventec's continuous use of the Product Trademarks since 2014 (as well as prior use by SMTI, Inventec's predecessor in interest), the Product Trademarks have achieved secondary meaning as

designating Inventec as the unique source of various SMT products.  Inventec claims common law trademark rights in the Product Trademarks.

27.     On April 21, 2022, Plaintiff filed a trademark application with the United States Patent and Trademark Office ("USPTO") to register the mark AMTECH under U.S. Serial No. 97/374,789 relating to its performance chemical goods which application is pending. A copy of Inventec's trademark application is attached hereto as Exhibit B.

**Inventec's Former Distributor: Optimal and Mark Miller**

28.     As stated above, Inventec acquired the assets of SMTI in 2014. At the time, Leigh Gesick was the sole shareholder of SMTI. Subsequent to the sale, Gesick served as Director of U.S. Operations of Inventec until March 2019.

29.     In early 2016, Optimal Services, LLC, then doing business as Celebration Tech, became a distributor of Inventec's products under the AMTECH trademark pursuant to an unwritten distribution arrangement and a regular course of dealings with Mark Miller, the sole point of contact for Celebration Tech (the "Distribution Agreement").

30.     Upon information and belief, all the corporate Defendants serve as alter egos for Mark Miller.

31.      Upon information and belief, the corporate Defendants identify either residential locations or mail box rental locations.

32.     Florida corporate records show Mark Miller as the Manager of Optimal. (*See* Exhibit C).

33.     The New Mexico LLC has admitted in a filing case pending before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office that Miller is its Manager.

34.     By at least as early as March 28, 2017, Optimal adopted Amtech Direct as its assumed business name in its role as Inventec's authorized distributor.

35. Inventec did not grant Optimal, or any third-party, the right to create a legal entity containing the "Amtech" name, nor to file for trademark applications for the AMTECH trademark in its own name, nor to publicly assert ownership rights in the AMTECH trademark.

36. Optimal has publicly acknowledged its role as a licensed distributor of Inventec. For example, it operates the website at www.amtechdirect.com (the "AD Website"), and noted on that website as recently as June 18, 2020 that "AMTECH DIRECT IS A LICENSED DISTRIBUTOR, NOT A SUBSIDIARY OF INVENTEC PERFORMANCE CHEMICALS USA." (*See* Exhibit D).

37. Optimal assented to the validity of Inventec's ownership of the AMTECH and Product trademarks by entering into and publicly ratifying its role as a "licensed distributor" of Inventec.

38. Inventec allowed Optimal to distribute Inventec's AMTECH-brand STM products utilizing the AD Website for the duration of the Distribution Agreement.

39. On or about August 18, 2021, Plaintiff terminated the Distribution Agreement with Optimal by means of a letter to Miller.

40. Prior to termination however, Optimal, Miller, and/or John Does, created an unknown number of legal entities using AMTECH-variant corporate or trading names, including the New Mexico LLC, without disclosure to or authorization from Inventec,

41. Upon information and belief, subsequent to termination by Inventec, Optimal and Miller, operating through a network of related companies including defendants Distribution LLC, and Manufacturing LLC, have brazenly continued to sell AMTECH brand products.

**Defendants' Infringing Activities**

42. Defendants' unauthorized sales of AMTECH-brand products may have begun prior to the August 2021 termination letter. Upon information and belief, in or around 2020,

Defendants were producing and selling AMTECH branded product using unauthorized formulations and/or by repackaging Plaintiff's products by changing the "sell by" dates and passing off such unauthorized and/or repackaged products as AMTECH products originating with or authorized by Plaintiff.

43.     As stated above, Inventec notified Optimal of its termination as an authorized distributor of AMTECH products via letter dated August 18, 2021. The notice of termination unambiguously notified Defendant Optimal that it would no longer be authorized as of September 18, 2021 to sell any products bearing the AMTECH trademarks, including products bearing the Product Trademarks.

44.     Despite termination of the Distribution Agreement, and without Inventec's authorization, upon information and belief, Defendant Optimal continued to hold itself out as Amtech Direct, and, in coordination with the other Defendants, continued to use the AMTECH mark in conjunction with the marketing, promotion, sale and offering of goods not originating with or authorized by Inventec in United States commerce.

**The Unauthorized '626 Trademark Application**

45.     Although Defendants use the AMTECH mark followed by the ® symbol on the AD Website, none of defendants owns a U.S. trademark registration.

46.     Shortly before Optimal was terminated as a distributor by Inventec in August 2021, and unknown to Inventec at that time, Amtech LLC, herein referred to as the New Mexico LLC, filed a trademark application with the United States Patent and Trademark Office for the mark AMTECH, U.S. Serial No. 90/748,626 (the "'626 Application").

47.     The '626 Application sheds light on the network of companies related to Optimal, suggesting common ownership and/or control of the Defendants by Miller, and as such,

illustrates that the Defendants are a single entity. A copy of the '626 Application is attached hereto as Exhibit E.

48.     Mark Miller is the manager of the'626 applicant, the New Mexico LLC.

49.     The '626 Application was filed six weeks prior to Optimal's termination.

50.     The '626 Application in the name of the New Mexico LLC covers the same distributorship services for a range of SMT products Optimal provided pursuant to its agreement with Inventec, claiming rights for use of the mark covering the time period during which the Agreement was in effect.

51.     The '626 Application was not authorized or consented to by Inventec. Inventec has had no dealings with any entity named Amtech LLC and has never authorized this entity nor any third party to file any trademark application in its own name for the AMTECH trademark (nor to create a legal entity with "Amtech" in its business name).

52.     All of the specimens of use in the '626 Application depict use of the AMTECH mark made by or on behalf of Inventec. Accordingly, all rights arising from such use inure to the benefit of Inventec, and not the New Mexico LLC nor Optimal, nor to any entity other than Inventec (which has been using the AMTECH trademark prior to any date identified in the '626 Application).

53.     Consequently, Inventec has opposed the '626 Application in a proceeding before the U.S. Trademark Trial and Appeal Board, Opposition No. 91276646. The Opposition is pending.

54.     Additionally, the specimens submitted in connection with the '626 Application (the "Specimens"), and the date of first use claimed therewith, evidence the relatedness of the New Mexico LLC to Optimal and to another co-Defendant, the Distribution LLC.

55.     Certain of the Specimens of trademark use  are screenshots from the website operated by Optimal at www.amtechdirect.com displaying Inventec products bearing the AMTECH mark, and thus the New Mexico LLC is presumably falsely asserting that rights arising from actions of Optimal, inure to the New Mexico LLC's benefit. (*See* Exhibit E).

56.     Further tying the New Mexico LLC to Optimal was an additional Specimen of use, a packing slip from 2017 issued from a Celebration, Florida address of Optimal, using Optimal's dba, AMTECH DIRECT. As stated above, Optimal was the authorized distributor of Inventec in 2017 and on the day the '626 Application was filed, and therefore any rights arising from use of the AMTECH name by Optimal as a trading name or otherwise, inured to Inventec's benefit, pursuant to Optimal's then-agreement with Inventec (noting again that Optimal publicly acknowledged its status as a licensed distributor).

57.     Accordingly, neither Optimal nor the New Mexico LLC had a legal or contractual basis for asserting ownership in the AMTECH trademark in connection with the sale and distribution of SMT products depicted in the '626 Application.

58.     Additionally, with regard to the Defendant Distribution LLC, its ties to Miller, Optimal, and the New Mexico LLC, are illustrated by other specimens from the '626 Application.  Shipping labels from May 2021 (again, within the period of the Agreement with Inventec), identify the sender as "Amtech Distribution" of Clinton, Connecticut .

59.     Furthermore, Optimal has used the name "Amtech Distribution" elsewhere - on the "contact us" page of the website at www.amtechdirect.com, where Optimal identifies its U.S. operation as Amtech® (sic) Distribution LLC.

60.     Finally, the claimed first use date in the '626 Application is October 20, 2016, the date on which Optimal registered the <amtechdirect.com> domain name without Plaintiff's authorization.

61.    Accordingly, the '626 Application, evidencing common management, overlapping claims of rights, and overlapping connections to the Infringing Products, demonstrates coordinated ownership and/or control of Optimal, the New Mexico LLC, and Distribution LLC, and that the corporate Defendants operate as a single entity. Furthermore, that entity is controlled by Mark Miller.

62.    Upon information and belief, Mark Miller, the principal of Optimal, acting without the authorization of Inventec, caused various legal entities to be created, which entities contained the name Amtech in their corporate and/or trading names, such as Amtech, LLC of New Mexico, shortly before Optimal was terminated by Inventec.

**The Defendants' Sale of Infringing Products**

63.    As stated above, Optimal was terminated by Inventec as an authorized distributor on August 18, 2021, effective September 18, 2021. The termination, addressed to Mark Miller in Celebration, Florida stated in part:

> After this date you will not be authorized to sell any of our product nor to use any of our **trademarks**, **brands** & **product names** including without limitation, Amtech or Inventec trademarks in all supports (including on **website** and **domain name**). As a reminder, you will find attached in Appendix A the non-exhaustive list of related reference products. Any unauthorized sale of Amtech or Inventec Product after the date of termination will constitute fraud and trademark violation for which Optimal Service LLC shall be fully liable. (emphasis added).

64.    The Appendix to the Termination Letter identified all Inventec product names, including NC-559-V2, RMA-223, and SynTECH Tacky Flux. (*See* Exhibit F).

65.    Despite the unambiguous termination and revocation of any authorization Optimal may have had to use the AMTECH and Product Name trademarks, Optimal and one or more other named Defendants and John Does, are manufacturing and selling infringing SMT products under the AMTECH and Product Name trademarks (the "Infringing Products").

66.     The Infringing Products not only infringe the AMTECH and Product Name trademarks, but use an identical font and use identical coloring on labeling and packaging. Below is an example of the Inventec NC-559-V3 product on the left, and the infringing product on the right:

 

67.     Below is an example of Inventec's SynTECH product on the left, and the infringing SynTECH product on the right:



68.     Both NC-559 and SynTECH Tacky Flux or TF were product names appearing in both the 2014 Purchase Agreement and in the Termination Letter.

69.     Optimal sells its Infringing Products on actual notice of Inventec's long time use of both the AMTECH trademark, and of the various Product Names, on SMT products.

70.     Upon information and belief, one or more of the Defendants controls the domain name <amtechdirect.com> and operates a website at www.amtechdirect.com.

71.     Upon information and belief, one or more of the Defendants controls the domain name <amtechsolder.com>, which domain name re-directs to www.amtechdirect.com.

72.     Attached as Exhibit G are print-outs depicting all products offered for sale by the Defendants on the AD Website.

73.     Attached as Exhibit H is a list of 52 products, all of which were identified in the Termination Letter as proprietary names of Inventec, and all of which are offered for sale by the Defendants.

74.     Upon information and belief, one or more of the Defendants controls the Facebook page https://www.facebook.com/amtechdirect.

75.     Upon information and belief, one or more of the Defendants controls the Twitter handle @amtechdirect.

76.     Upon information and belief, one or more of the Defendants operates an Amazon storefront under the name AMTECH DISTRIBUTION LLC (the "Amazon Storefront"), giving its address as 1041 N DuPont Hwy, Unit 1122, Dover, DE 19901-2206.

77.     Attached as Exhibit I are print-outs of listings from the Amazon Storefront promoting Optimal's infringing products.

78.     The Facebook page, Twitter feed, and Amazon Storefront direct traffic to www.amtechdirect.com.

79.     Upon information and belief, all the products offered for sale on the AD Website and on the Amazon Storefront bear the infringing AMTECH trademark on their packaging and/or containers, and in accompanying promotional materials.

80.     The Defendants promote their infringing SMT products in identical or competitive channels of trade as those of Inventec, including but not limited to general ecommerce marketplaces such as Amazon.com, and online and retail sellers of SMT products.

81.     Upon information and belief, Defendants utilize email addresses using the <amtechdirect.com> domain name. For example, the AD Website solicits inquiries to Sales@AmtechDirect.com. Such email addresses reflect trade name use, furthering Defendants' masquerade as the source of AMTECH products.

**YouTube Influencer Videos And False Claims Of Originality**

82.     Upon   information   and   belief,   unknown   entities   have   been   contacting
"influencers" (social media content creators) who discuss SMT products on YouTube, on behalf
of the Defendants. Upon information and belief, these John Does have made misrepresentations
relating to Optimal's SMT products, which misrepresentations were repeated by the influencers
in YouTube videos. Optimal has subsequently promoted these videos on Optimal's website and
its social media accounts.

83.     As an example, on or about April 19, 2022, YouTube user TCRS Circuit posted a
product review of Amtech NC-559-V2-TF on YouTube (the "TCRS Video"). (*See* Exhibit J).
TCRS   displayed   the   following   product,   bearing   the   infringing   AMTECH   mark,   the   Product
trademark NC-559-V2-VF, and the URL www.amtechdirect.com. *See* Exhibit K.



84.     The product depicted above is unauthorized and infringes Inventec's trademark
rights in its AMTECH and NC-559-V2-TF trademarks.

85.     In the video, TCRS expressed his view that he believed that the formulation of the
AMTECH NC-559-V2-TF tacky flux product had changed over time. He indicated that he had
recently received the "backstory" in an email but that "I don't want to talk too much about
anything I'm not supposed to."  (*See* Exhibit L). However, he reported that "Amtech is back out

on their own separate from Inventec and is now making the original." (*See* Exhibit M). He displayed a tube marked AMTECH NC-559-V2-TF. The label displays the infringing AMTECH logo above the URL www.amtechdirect.com. He identified the date of manufacture as March 8, 2022, and the manufacturer as Amtech Manufacturing. (*See* Exhibit N).

86.     By March 8, 2022, Amtech Manufacturing and any other entity associated with Defendants had already been terminated for almost six months and thus was not authorized to manufacture or distribute any product bearing the AMTECH trademark or NC-559-V2 product name.

87.     On April 19, 2022, the date of the TCRS Video, Defendant Optimal had been terminated as distributor and thus was not authorized to sell or distribute products bearing any Inventec trademark, including AMTECH and NC-559-V2.

88.     In the TCRS Video, Inventec's product is compared unfavorably to Amtech Manufacturing LLC's unauthorized product.

89.     The webpage hosting the TCRS Video includes links to purchase the AMTECH NC-559-V2-TF on the unauthorized AD Website.

90.     Optimal embeds the TCRS Video on its website at amtechdirect.com/blogs/news, above the title: "The ORIGINAL Amtech NC-559-V2-TF is back. What . . ." as depicted below:



91.     Upon information and belief, Defendants or their agents communicated false statements to influencers in the hope the influencers would propagate these false claims about the provenance and quality of the Infringing Products.

92.     Upon information and belief, Optimal promoted the influencers' repetition of the Defendants' false claims.  Reproduced below is a copy of a Facebook post from the page of a user named "AMTECH DIRECT" dated February 5, 2022 (the "Facebook post"):



93.     Reproduced below is a tweet posted by the @amtechdirect Twitter account dated

February 5, 2022 (the "Twitter post"):



94.     Upon information and belief, the Defendants communicated with these and other influencers (including but not limited to a YouTube video entitled "I've been using the wrong AMTECH flux. Or is the right flux?" at https://www.youtube.com/watch?v=IG8_NAP72oU) and supplied these influencers with samples of the Defendants' infringing products.

95.     Upon information and belief, the creators of the TCRS, Old School, and Wrong Flux videos have all been deceived by the Defendants in several ways. They erroneously believe that Optimal has the right to use the AMTECH and NC-559-V2 trademarks. They erroneously believe that Optimal is a lawful successor in interest to whatever entity previously manufactured the tacky flux with which they had previously been familiar. Finally, they erroneously believe that products made by Defendants now are the "original," that is to say they are somehow the same product as those previously (and still) produced by Inventec.

96.     Upon information and belief, the Defendants' communications with the influencers caused actual confusion as to the source of authentic AMTECH products, which confusion the influencers then amplified and transmitted via their social media outlets. This transmission of erroneous and deceptive information was caused and intended by the Defendants.

97.     Defendants' acts as alleged herein have caused and are likely to cause confusion, mistake, deception among the relevant consuming public as to the source or origin of the Defendants' goods and services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' goods and services originate from, are associated with or are affiliated with, or are otherwise authorized by Plaintiff Inventec.

98.     As further evidence of the Defendants' intentionality, Defendants did not acknowledge receipt nor respond to a demand letter sent by Inventec July 11, 2022 addressed to

Miller, setting forth Inventec's claims, demanding cessation of all infringing activities, including use of the infringing AD Website.

99.    Defendants' acts are willful and with the deliberate intent to trade on the goodwill of Plaintiff's AMTECH mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiffs' goods to Defendants.

100.    Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

101.    In view of the interrelationship, common ownership, common management, and interchangeability of trading names, the Defendants act as a common enterprise. Each count contained herein is alleged against all Defendants.

### COUNT I - False Designation of Origin under 15 U.S.C. § 1125(a)

102.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

103.    Defendants have intentionally and knowingly used the name and mark AMTECH and the Product Trademarks in commerce after the termination of the Distribution Agreement without Inventec's consent or authorization. These marks are identical to those used by Inventec.

104.    Optimal and co-Defendants have falsely held themselves out as being the successor in interest to Inventec or SMTI, and the source of the "original" versions of Inventec's SMT products.

105.    Defendants' Infringing Products, including but not limited to all products identified in Exhibits G, H, and I attached hereto, are in identical SMT product categories as those sold by Inventec, using identical or near-identical Product Trademarks. The Infringing

Products bear the AMTECH marks and the respective Product Names without authorization from Inventec, and bear identical or near-identical product packaging.

106.     The corporate Defendants make trading name use of their business names which include the AMTECH mark (and in the case of Optimal, makes trading name use of its dba AMTECH DIRECT).

107.     Defendants' SMT products are sold in identical or competitive channels of trade, namely general ecommerce marketplaces such as Amazon, and retail and online markets for SMT products.

108.     Defendant's unauthorized use in commerce of the AMTECH mark and the Product Trademarks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services and is likely to cause mistake or confusion and to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

109.     Defendants' statements in their commercial advertising and promotion, including, but not limited to, on the Unauthorized Website, on their Amazon storefront, and via product reviews on sites like YouTube, misrepresent the nature, characteristics, or qualities of Plaintiff's products.   Such misrepresentations include, but are not limited to, statements that Plaintiff's products are of questionable quality.

110.     Defendants' unlawful actions constitute unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

111.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff.

112.    Defendants' unlawful actions have occurred with actual knowledge of Inventec's prior rights in the AMTECH and Product Trademarks.

113.    By reason of the foregoing, Plaintiff is being damaged by Defendants' willful activities and will continue to be damaged unless Defendants are enjoined from the aforesaid acts.

114.    Plaintiff has no adequate remedy at law.

### COUNT II – False Advertising under 15 U.S.C. § 1125(a)

115.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

116.    As stated above, Optimal claims on its website at www.amtechdirect.com that "The ORIGINAL Amtech NC-559-V2 is back." (the "Originality Claim"). The Originality Claim appears in connection with the embedded April 2022 TCRS Video, which video purportedly represents an "influencer's" comparison of what is represented to be various tubes of tacky flux, all of which are labeled as AMTECH brand tacky flux.

117.    The claim that Optimal's product is the ORIGINAL Amtech NC-559-V2 is literally false or is true but misleading to consumers.

118.    Optimal's Originality Claim was published on its website and on social media used to promote its products, and which constitute advertisements made in interstate commerce.

119.    Upon information and belief, Optimal's Amtech NC-559-V2 product is not the ORIGINAL product because it does not use an identical formula to any previously used by Inventec and/or identical ingredients and/or identical quality of ingredients and/or identical methods of manufacture, packaging, and storage or identical quality control methods.

120.    Optimal's Originality Claim is a misrepresentation as to a standard of quality and therefore is material to prospective customers of its product.

121.     Optimal's Originality Claim is a misrepresentation as to the provenance of its products, which is an implied representation of quality, and therefore is a material consideration to prospective customers of its product.

122.     The Defendants have communicated additional false claims to an unknown number of third-party review sites, such as the influencers referred to herein. These false claims include the Originality Claim, but also include but are not limited to, false assertions that Defendants are successors-in-interest to SMTI, and that Inventec is not the owner of the AMTECH trademarks and Product Trademarks.

123.     Defendants and Inventec are competitors and thus Optimal's misrepresentations injure Inventec by diverting Inventec's sales, or damages Inventec's goodwill, or results in ill-gotten gains by Optimal.

124.     Defendants' unlawful actions constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

125.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff.

126.     By reason of the foregoing, Plaintiff is being damaged by Defendants' willful activities and will continue to be damaged unless Defendants are enjoined from the aforesaid acts.

127.     Plaintiff has no adequate remedy at law.

### COUNT III – Violation of the Federal
### Anti-Cybersquatting Consumer Protection Act Under 15 U.S.C. § 1125(d)

128.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

129.     Upon information and belief, the Defendants own or control the domain name

<amtechdirect.com>, as the domain name leads to the infringing AD Website, which hosts content originating with Amtech Direct, a known dba of Optimal. Furthermore, the AD Website identifies the Defendant, Amtech Distribution LLC as a source of the website, under a page labeled "Contact us."

130.     Upon information and belief, the Defendants also own and control the domain name <amtechsolder.com> as it re-directs to <amtechdirect.com> (<amtechsolder.com> and <amtechdirect.com> are collectively referred to herein as the Domain Names).

131.     The identified registrants of the Domain Names at this time are redacted for privacy reasons in the published Whois database.  (*See* Exhibit O).

132.     The Domain Names wholly or partially contain Inventec's distinctive AMTECH word mark, as part of the Defendants' bad-faith effort to profit from the good will and reputation associated with Plaintiff's AMTECH mark and the AMTECH brand.

133.     Inventec owned trademark rights in the AMTECH mark prior to the Defendants' registration, renewal, purchase, or assignment of either of the Domain Names by or to the Defendants or to entities owned, controlled, or otherwise related to the Defendants.

134.     The Defendants' registration, renewal, purchase, or assignment of either of the Domain Names by or to the Defendants or to entities owned, controlled, or otherwise related to the Defendants occurred with prior knowledge of Inventec's prior trademark rights in the Amtech trademark.

135.     Inventec advised Mark Miller and Optimal in writing on August 18, 2021 that they were not authorized to use the AMTECH trademark in any manner, including but not limited to in connection with domain names.

136.     The Domain Names contain, and are confusingly similar to, the AMTECH mark.

137.     The Defendants behind the Domain Names and the infringing AD Website to

which they resolve, purposefully utilize the AMTECH mark for the unlawful purpose of offering for sale infringing merchandise online.  Thus, the Domain Names have not been and are not being used for any legitimate purpose.

138.    The Defendants use the Domain Names without authorization and with the bad faith intent to divert potential customers from Plaintiff's legitimate online sales efforts on its official Internet website.

139.    Upon information and belief, the Defendants use the Domain Names to deceive Inventec's online customers into drawing an association between Plaintiff and the infringing products offered for sale on the infringing AD Website.  In doing so, the Defendants seek to profit from the good will and reputation associated with the AMTECH mark and brand.

140.    The registration of the Domain Names and their continued use in resolving to the infringing AD Website is causing and is likely to cause substantial and irreparable injury to the consuming public and to Inventec.

141.    Inventec has no adequate remedy at law and has been and continues to be damaged in an amount yet to be determined.

142.    In the alternative, Plaintiff is entitled to statutory damages in the amount of $100,000 for each of the two domain names, as the Defendants' cybersquatting was willful under 15 U.S.C. § 1117(d).

143.    For the above-stated reasons, Inventec is entitled to transfer of the Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i).

**COUNT IV – Violation of the Connecticut Unfair Trade Practices Act**

144.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

145.    By engaging in the acts alleged above, Defendants have willfully and maliciously

engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness.

146.    Defendants' willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

147.    Defendants' conduct has caused and will continue to cause substantial injury to Inventec.

148.    Defendants have committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

149.    Inventec has suffered, and if Defendants are not enjoined will continue to suffer, an ascertainable loss of money or property as a result of Defendants' actions.

150.    The Defendants' sale of the Infringing Products of questionable quality, which products are sold, in part, to entities that utilize the products in connection with military and aviation applications, puts at risk the safety of those entities, and the safety of the public.

151.    By virtue of the conduct above, Defendants have engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests entry of judgment against Defendants finding as a matter of law and fact as follows:

A.    That Defendants' use of the AMTECH trademark and the Product Trademarks (collectively "the AMTECH Marks") be adjudged a violation of 15 U.S.C. § 1125(a) as a false designation of origin and false description or representation.

B.    That Defendants and all other persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, be forthwith

preliminarily and thereafter permanently enjoined, pursuant to 15 U.S.C. § 1116 and the laws of the State of Connecticut from:

    i.   Using the word "Amtech" by itself, or with any other prefix, suffix or accompanying words, as a trademark or otherwise to market, advertise, and/or identify Defendants' products or services;

    ii.   Falsely designating the origin of Defendants' products or services;

    iii.   Causing a likelihood of confusion in the public as to the source or endorsement of Defendants' products or services;

    iv.   Otherwise infringing Plaintiff's trademark rights or aiding and abetting anyone in infringing Plaintiff's trademark rights; and

    v.   Unfairly competing with Plaintiff in any manner whatsoever.

C.    That Defendants be precluded from applying to register any trademarks that (i) incorporate the AMTECH mark; (ii) incorporate the word "Amtech" by itself, or with any other prefix, suffix, or accompanying words; or (iii) any mark confusingly similar thereto.

D.    That Defendants be directed by this Court to withdraw any pending application or surrender for cancellation any registration granted to Defendant pursuant to 15 U.S.C. § 1057(e) or, in the alterative, that the Court direct the U.S. Patent & Trademark Office to refuse such applications or cancel such registration(s) pursuant to 15 U.S.C. § 1119.

E.    That Defendant Optimal transfer to Plaintiff the domain names <amtechdirect.com>, <amtechsolder.com>, and any other domains using the word "Amtech" for good and valuable consideration.

F.    That the Defendants transfer control to Plaintiff of any social media account including the name AMTECH, including but not limited to the Twitter handle @amtechdirect and the Facebook account of the user AMTECH DIRECT.

G.      That Defendants be directed to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

H.      That Defendants be required to account to Plaintiff for any and all profits derived by them by reason of Defendants' acts complained of herein.

I.      That Defendants be ordered to pay over to Plaintiff all damages which Plaintiff has sustained as a consequence of the acts complained of herein, subject to proof at trial, and that Plaintiff be awarded Defendants' profits derived by reason of said acts.

J.      That any award of damages be trebled in view of the reckless, willful, and intentional natures of Defendants' conduct.

K.      That Plaintiff be awarded punitive damages as provided by law.

L.      That pre-judgment interest be awarded to Plaintiff.

M.      That Defendants be ordered to pay Plaintiff's costs, disbursements and attorneys' fees incurred in bringing this action.

N.      For any other and further relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff, pursuant to Fed. R. Civ. P. 38, demands trial by jury on all issues triable to a jury.

Dated: October 7, 2022                                    Respectfully Submitted,

                                                         LEASON ELLIS LLP

                                                         Lori Cooper (CT29133)
                                                         Karin Segall (to apply PHV)
                                                         Martin Schwimmer (to apply PHV)
                                                         One Barker Avenue, Fifth Floor
                                                         White Plains, NY 10601

Tel: (914) 288-8011
Fax: (914) 288-0023
Email: cooper@leasonellis.com;
segall@leasonellis.com;
schwimmer@leasonellis.com;
lelitdocketing@leasonellis.com

*Attorneys for Plaintiff*