```
                 UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - -

INVENTEC PERFORMANCE CHEMICALS      NO.:  3:22-cv-01252-RNC
USA LLC
                 Plaintiff

          v.

OPTIMAL SERVICES LLC, AMTECH
MANUFACTURING LLC, AMTECH LLC,
AMTECH DISTRIBUTION LLC, MARK
MILLER, ET AL
                 Defendants      Hartford, Connecticut
                                 JULY 18, 2023
- - - - - - - - - - - - - - - - - -


            ORAL ARGUMENT and SCHEDULING CONFERENCE



B E F O R E:

    THE HONORABLE ROBERT N. CHATIGNY, SENIOR U.S.D.J.




A P P E A R A N C E S:

FOR THE PLAINTIFF:

          LEASON ELLIS LLP
          One Barker Avenue, Fifth Floor
          White Plains, NY  10601
          BY:  MARTIN BERNARD SCHWIMMER, ESQUIRE

FOR THE DEFENDANT:

          LAW OFFICES OF STEPHEN J. CURLEY, LLC
          Six Landmark Square, Fourth Floor
          Stamford, CT 06901
          BY:  STEPHEN JAMES CURLEY, ESQUIRE


                              Alicia A. Cayode Kyles, RMR
                              Official Court Reporter
```

1                (The Court entered at 10:00 a.m.)
2                THE COURT:  Good morning.
3                ALL COUNSEL:  Good morning, Your Honor.
4                THE COURT:  Would you please enter your
5    appearances at this time.
6                MR. SCHWIMMER:  Martin Schwimmer of the firm of
7    Leason Ellis, appearing on behalf of plaintiff Inventec.
8                THE COURT:  Good morning.
9                MR. SCHWIMMER:  Good morning.
10               MR. CURLEY:  Good morning, Your Honor.  Stephen
11   Curley for the defendants.
12               THE COURT:  Good morning.
13               There is a pending motion to dismiss and more
14   recently the plaintiff requested a scheduling conference
15   and suggested that we do that today while we're together.
16               I've read the papers that you have submitted in
17   connection with motion to dismiss and I'm prepared to
18   discuss that with you now, and I'm also available to speak
19   with you about scheduling.
20               So let me start by asking defense counsel,
21   Mr. Curley, to make whatever additional presentation you
22   wish.
23               MR. CURLEY:  Your Honor, if you're familiar with
24   the briefs we'll stand on those.
25               THE COURT:  All right.  As I read the papers, in

1  particular the reply memorandum, it appears that the crux
2  of the motion is the absence of allegations that one would
3  typically expect to see in support of a claim that
4  corporate defendants constitute a single enterprise.
5          MR. CURLEY:  Fair to say, Your Honor.
6          THE COURT:  All right.  Mr. Schwimmer, you're
7  welcome to comment on that theory if there's anything more
8  that you would like to say.
9          MR. SCHWIMMER:  I respectfully disagree, Your
10 Honor.  I believe that the corporate enterprise and alter
11 ego theory is a little bit of a red herring.  I believe
12 that the true sole issue that's before this court is
13 simply whether plaintiff pled all of the elements to all
14 of the causes of action against all of the defendants.
15         I guess I'm somewhat to blame for sending
16 defendant off on a red herring because when they contacted
17 us for a meet and confer about the complaint and referred
18 to the shotgun pleading concept in the Eleventh Circuit,
19 it wasn't really the forum to go over all 20 possible
20 permutations in the complaint.  So, perhaps to make a
21 short argument of it, I responded that this was not the
22 Eleventh Circuit, but also that, at a minimum, because
23 they framed their quandary as each defendant does not know
24 which allegation applies to them.
25         So our view is, at a minimum, the fact that we

1   have the conclusory paragraph, every cause applies to
2   every defendant, said they all know what they're being
3   told.
4              But the reality is the proper inquiry for the
5   court is to substitute itself as a proxy for the defendant
6   and they're to look at the complaint and in the complaint
7   there are direct allegations against every defendant for
8   every element of the causes.
9              I don't think there's time to go through all 20,
10  but I can be brief and show how there are these direct
11  allegations.  For example, we clearly -- plaintiff clearly
12  states with regard to trademark infringement that it owns
13  a prior mark and that the mark was used on an infringing
14  product and if there was any dispute there is a photograph
15  on the very first page of the complaint that said:  This
16  is the infringing product.
17             And if we say to an entity called Amtech
18  Manufacturing that you are selling an infringing product
19  Amtech solder, they know what we are talking about.  They
20  know what the cause of action is.
21             At a minimum, the trading name use of the four
22  corporate defendants, we allege, clearly in several spots,
23  is trademark infringement.
24             So those direct elements, we go against each
25  thing.  I don't know if we should take the Court through

1  all of these things, but Amtech Manufacturing's name is on
2  the tube of the product.  Amtech Direct and Amtech
3  Distribution are on the website and the store that sells
4  the product.
5          We allege that Mr. Miller is the only entity,
6  the only individual that we've ever encountered in
7  connection with all of these corporate defendants.
8          Do you want me to go on fleshing out the 20
9  permutations?  It just remains our position that they're
10 all there.
11         The closest that we ever came to really needing
12 to rely on any other alternate theory of liability comes
13 with Amtech Manufacturing with regards to cybersquatting.
14 There are several domain names, Amtech Direct.com being
15 one of them.  Amtech Direct and Amtech Distribution's name
16 appears on the website that the cybersquatted name
17 resolves to.  So those are direct allegations against
18 Distribution and Direct.
19         But the website has pictures of the product in
20 whom Amtech Manufacturing's name appears on and also, as
21 stated several times, especially in the numbered
22 allegations in the 50s, the New Mexico defendant, Amtech
23 LLC, claims the benefit of the trademark rights in
24 specimens derived from the website.  And as stated
25 elsewhere, Mr. Miller is the manager of the New Mexico

```
 1  LLC, he's the principal of Direct and we state the web.
 2             We believe we will need this to prove this sort
 3  of network of interrelated companies down the line.  I
 4  could get into why we need it, but it's not germane to our
 5  immediate point, which is that every defendant knows from
 6  this complaint what their relationship is to the four
 7  causes of action and if there -- if they want to say
 8  listen, Defendant Number 3 doesn't know why it's named for
 9  false advertising, I can cite the numbered paragraph.
10             THE COURT:  I think that's a fair statement.
11  I've reviewed the complaint in detail and, frankly, I
12  think it does a good job of laying out the facts and
13  circumstances permitting a reasonable inference that
14  Mr. Miller created these LLCs and is in control of the
15  LLCs and is using them in furtherance of sales of
16  infringing products and the exhibits provide further
17  support for that inference.
18             I will say that as a lay person, you know, with
19  no knowledge of this industry and with no particular
20  expertise in trademark law, the photographs that are
21  included in the complaint are striking to me, to the point
22  where I wonder what Mr. Miller would say in response to
23  these claims.  I understand that there is pending before
24  the trademark office an application filed by, is it Amtech
25  LLC?
```

1             MR. CURLEY:  I believe that's the case, Your
2    Honor.
3             MR. SCHWIMMER:  Your Honor, two applications,
4    there now are two trademark trial and appeal board
5    opposition proceedings brought by plaintiff, both are now
6    suspended pending this proceeding.  The first one was
7    against Amtech LLC, the New Mexico entity.  The most
8    recent one is against a new entity called Amtech
9    Holding -- I want to say LLC, don't quote me, please, for
10   a different application.
11            To anticipate the court's obvious question, no,
12   I don't know if we will need to join them yet because the
13   only action we're aware of is the act of filing the
14   trademark application.
15            THE COURT:  That's helpful.  It may be that you
16   know more about this area of the law and how the court
17   interfaces with the pending administrative proceedings.
18            So let me ask, I mean it -- those proceedings
19   are suspended pending what we do here.  Is that typical?
20            MR. SCHWIMMER:  Yes, because the District Court
21   has much broader powers, specifically the ability to grant
22   injunctive and monetary relief.  The TTAB will, as a
23   matter of course, most often suspend its own proceedings
24   to await some sort of determination from a civil court and
25   that is what occurred in these two TTAB proceedings.

1               THE COURT:  So is it fair to proceed on the
2    assumption that those proceedings will remain suspended
3    until determination is made here as to the parties' rights
4    in the Amtech brand or lack of rights in the Amtech brand?
5    Is that what this case is fundamentally about?
6               MR. SCHWIMMER:  So I'll note that both of the
7    motions to suspend were made on consent.  So the New
8    Mexico defendant has agreed to the suspension.  The theory
9    behind this practice of suspending is exactly because this
10   court, we are asking this court to make the determination
11   of plaintiff's rights with regard to defendants.
12              In this situation, the requested -- the
13   application that the New Mexico entity request -- applied
14   for, would overlap.  The parties are agreeing that there's
15   a probable overlap in subject matter in that regard.  So
16   that's the logic behind what's going on.
17              So, yes, we would anticipate that, that assuming
18   this goes to final adjudication, this court would make the
19   sort of determination that would allow the TTAB to resolve
20   those.
21              As a practical matter, we would request relief
22   directing -- we are requesting that this court will direct
23   the New Mexico entity to abandon its application.  The
24   fact that the applicant in the second proceeding is not
25   before this court at this time, I guess we will deal with

1  that issue when we learn more information.
2          THE COURT:  So, you know, I have not had a case
3  like this before and so this is new terrain for me.  I've
4  had plenty of patent cases where counsel have considered,
5  you know, who should go first, should the court go first,
6  should we defer to the patent office.  But not a trademark
7  case.  And so let me ask, is this type of litigation
8  something that comes along fairly frequently and I just
9  haven't seen such a case, but they're out there or is this
10 somewhat unusual?
11         MR. CURLEY:  I defer to plaintiff's counsel on
12 that, Your Honor.  It's unusual for me.
13         MR. SCHWIMMER:  When you -- does the court, when
14 it refers to this case are you referring to where there is
15 a parallel proceeding?
16         THE COURT:  In large part, yes.  But to be
17 clear, Mr. Schwimmer, I'm thinking -- I've had lots of
18 unfair trade practices cases, nothing like this in the
19 sense that, as I said before, you know, the infringing
20 product as depicted in those photos is strikingly similar
21 to the plaintiff's product and this makes me think this is
22 not the usual situation.  Mr. Miller must be thinking that
23 he has a right superior to the plaintiffs, so that -- what
24 I have here, it seems, is a case that is a Lanham Act
25 case, a cybersquatting case, a CUTPA case, but unlike

1    those cases in my past, this case asks who has the
2    superior right to use the Amtech name, the plaintiff or
3    Mr. Miller.  And I gather that the parties are happy to
4    have me make that decision while putting the
5    administrative proceedings on hold.
6              And my question is, how often does that scenario
7    arise where the parties are disputing who has the superior
8    right to use a mark and, you know, administrative
9    proceedings raising that question are put on hold while
10   the court figures it out.
11             MR. SCHWIMMER:  So this is the only field I
12   practice, Your Honor.  To me the distinguishing
13   characteristic of this fact pattern is not so much that
14   there is a parallel TTAB proceeding and to me it also --
15   the TTAB's role is diminished in significance because this
16   is about enjoining use in the real world which is a power
17   that the TTAB does not have at all.  It can only determine
18   ownership of a registration.
19             To me, if I had to put this somewhere in the
20   constellation of trademark disputes, while very often
21   we'll -- it will come down to the likelihood of confusion
22   aspect, the Polaroid factors, in this circuit, this will
23   not be the points in contention.  You could say that this
24   is really a, the trademark infringement is a three element
25   tort, that the plaintiff has to establish ownership of a

1    superior trademark, of a prior trademark.
2             Now, it is -- would be, I guess, unfair for me
3    to categorize defendants' defense for two reasons.  It's
4    their job to articulate their defense; and, second, it's
5    never been given to us in full form.  We -- I can only
6    infer their argument from communications, some discovery
7    which has been held.
8             It will come as to an ownership dispute, they
9    will dispute that we own our marks in the Amtech mark
10   which we assert we've held through a predecessor interest
11   since 1994.
12            So, I will defer from categorizing defendants'
13   defense otherwise to feel that it's utterly wrong, Your
14   Honor, but --
15            THE COURT:  Sure.
16            MR. SCHWIMMER:  -- leave it at that.
17            THE COURT:  All right.  Mr. Curley, is there
18   anything you want to say at this point?
19            MR. CURLEY:  Yes, Your Honor, just based on what
20   counsel said in addressing the motion.  It seemed like at
21   least orally he was beginning to ascribe particular acts
22   to particular defendants.  And what has thrown us off is
23   Paragraph 15 of the complaint which asserts that they all
24   act as a single entity.  Which seems to be run afoul from
25   some of the distinctions that are being made here and that

1  leads us back to the 8(a)2 and 10(b) issue.
2           If it is indeed a single entity, then we
3  don't -- I think it's not disputed that we do not see all
4  the factors when it comes to a common enterprise being
5  pled directly.
6           So we're left to believe that they may act in
7  some measure of concert together, but they're not somehow
8  a common enterprise, hence the confusion.
9           If the plaintiff can articulate particular acts
10 to particular defendants, it will allow for the defenses
11 to, you know, be made directly to those claims.
12          But right now the defendants are still, when you
13 throw in the factor that they're 10 John Does thrown in as
14 well, exactly who is being accused of what and before
15 defenses can be fully formed we need to determine that.
16          So I just wanted to bring that out.  I tend to
17 think the court made its mind up with how to deal with
18 this motion but that Paragraph 15 is problematic from the
19 defendants' point of view.
20          THE COURT:  Okay.  Well, I understand that if
21 the plaintiff were ordered to do as you request, that is
22 make it as specific as possible at this point, the burden
23 of answering that complaint would be somewhat eased.
24          Even so, I think experienced counsel can
25 formulate an answer to the complaint as it currently

1   exists without prejudice to any legitimate interest and so
2   I think rather than order the plaintiff to take that step,
3   it's best to just get going and rely on pretrial procedure
4   to clarify what's what and if, in due course, the
5   plaintiff wants to amend the complaint in light of
6   discovery that's always a possibility.
7           Again, I think, if I assume the truth of these
8   allegations as I'm obliged to do, it is reasonable to
9   infer that Mr. Miller created these entities and operates
10  these entities in a coordinated manner and I would be
11  surprised if one or more of these entities was not
12  involved in the way that the complaint alleges and I
13  think, you know, any ambiguity is not a sufficient reason
14  to require repleading.
15          So, if we turn to scheduling, let's talk about
16  what you think makes the most sense for trying to get to
17  the heart of the matter sooner rather than later and save
18  your respective clients fees and expenses if possible?
19          Mr. Schwimmer, you're the plaintiff's counsel so
20  let me ask you to state your position.
21          MR. SCHWIMMER:  Thank you, Your Honor.
22          As background we note that the parties have
23  exchanged paper discovery to a certain extent and I thank
24  the defendants for their cooperation in that respect to
25  date.

1              We note that the parties had submitted a
2    schedule.  It wasn't signed, the parties acted as if that
3    schedule was approximately in place, but when this hearing
4    was delayed, it raised certain questions.
5              We did notice Amtech LLC, the New Mexico
6    defendant for 30(b)(6), I want to say the first week in
7    June.  And I will say that there was no great mastermind
8    strategy in place for that choice because that is the
9    entity that claims ownership of trademark rights through
10   its trademark application and asserts ownership of at
11   least two of the corporate defendants.  We thought that
12   was obviously the best place to start.
13             Defendants counsel provided reasons not to
14   comply with that notice, but the parties then did agree to
15   wait until this hearing for us to talk.
16             So we'll say that the 30(b)(6) for New Mexico,
17   having that deposition as soon as possible would be the
18   single most informative possible deposition to resolve any
19   questions about -- we believe it would resolve questions
20   about the relatedness of the parties and would really get
21   things going.
22             We have some dates that we can toss out.
23             MR. CURLEY:  Your Honor, is it all right if I
24   remain seated in this portion?
25             THE COURT:  Yes, it is.  Thank you.

1          MR. CURLEY:  I take this to be a scheduling
2  conference.
3          THE COURT:  Yes, thank you.
4          MR. CURLEY:  That said, I'm more than happy to
5  take those dates from Attorney Schwimmer and convey them.
6  Given this case, it's no surprise to plaintiff's counsel,
7  there is additional counsel that will most likely now move
8  to be admitted pro hoc vice with direct relationships to
9  the remaining actions between the parties that goes from
10 this, and I would presume that meeting their schedule is
11 also something to take into account.
12         We did talk preliminarily of having this
13 30(b)(6) deposition, were the motion to dismiss be denied,
14 in the month of August of this year and I have no reason
15 to believe that we wouldn't be able to get things arranged
16 so it can be done in the month of August.
17         My general thinking, if I may, Your Honor, with
18 regard to scheduling is that if we simply brought the
19 dates up in our report that we provided to the court and
20 make them current, triggering a responsive pleading to the
21 complaint for the defendants at say 30 days from the entry
22 of the order, which I presume will be today, and then
23 simply extending the remaining deadlines accordingly, that
24 would be my working assumption.
25         THE COURT:  I see Mr. Schwimmer nodding so I

1  take it that that's agreed.
2           MR. SCHWIMMER:  That was a yes.
3           THE COURT:  Okay.  Well, that's fine with me.  I
4  think that makes sense.
5           MR. CURLEY:  And I apologize, I haven't
6  mechanically adjusted those dates but I presume the court
7  can simply do that.
8           THE COURT:  All right.  Maybe that takes care of
9  it.  Is there something else that we ought to talk about
10 while we're together?
11          MR. CURLEY:  Not from the defendants, Your
12 Honor.
13          MR. SCHWIMMER:  No, Your Honor.
14          THE COURT:  All right.  Well, thank you for
15 coming in today.  I appreciate the opportunity to speak
16 with you directly and actually live.  It's a nice change.
17 But we will enter the order denying the motion and at the
18 same time setting out a schedule consistent with your
19 agreement.
20          MR. CURLEY:  Thank you, Your Honor.
21          THE COURT:  All right.  Thank you.
22          (The Court exited at 10:29 a.m.)
23          (* * * * *)
24
25

```
 1                    C E R T I F I C A T E
 2
 3
 4            I, Alicia A. Cayode Kyles, RMR, Official Court
 5   Reporter for the United States District Court for the
 6   District of Connecticut, do hereby certify that the
 7   foregoing pages are a true and accurate transcription of
 8   my shorthand notes taken in the aforementioned matter to
 9   the best of my skill and ability.
10
11
12
13
14
15
16
17
18
19   /s/_____
20   ALICIA A. CAYODE KYLES, RMR
     Official Court Reporter
21   United States District Court
     450 Main Street, Room 320
22   Hartford, Connecticut 06103
     (860) 509-8743
23
24
25
```